**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **RONALD D. GOODWIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 2:06CV53MLM** |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the application of Ronald D. Goodwin ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. § § 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381. Plaintiff filed a brief in support of the Complaint. Doc. 11. Defendant filed a brief in support of the Answer. Doc. 15. Plaintiff also filed a Reply. Doc. 12. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

---

[1]        Michael J. Astrue has been appointed to serve as Commissioner of Social Security. Therefore, the Court has substituted Michael J. Astrue for Jo Anne B. Barnhart as the Defendant in this suit pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

# I.
# PROCEDURAL HISTORY

Plaintiff filed applications for SSI and disability insurance benefits which were denied initially. [2] Tr. 44-45, 54-58. Petitioner requested a hearing before an Administrative Law Judge ("ALJ") which was held before ALJ Robert G. O'Blennis on October 28, 2004. Tr. 306-45. By decision dated September 16, 2005, the ALJ found that Plaintiff was not under a disability as defined in the Act. Tr. 17-36. Plaintiff filed a request for review with the Appeals Council which was denied on July 28, 2007. Tr. 6-9. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# TESTIMONY BEFORE THE ALJ

**A.      Plaintiff's Testimony:**

Plaintiff testified that at the time of the hearing he was forty-six years old and lived with his wife and two sons; that he had a ninth grade education; that he had autobody vocational training; that he last worked as a over-the-road truck driver; and that he became disabled on July 15, 2002 because he could no longer work as an over-the-road truck driver and because he could not find other work which he could physically perform. Tr. 311-13.

Plaintiff further testified that he does a little cooking in the morning; that he then "mess[es] with flowers" in the yard; that he spends his days reading or watching television; that three or four times a week he goes to a shop where he watches his sons work on their three-wheelers; that he does not participate in social groups or organizations; that he has difficulty shaving and putting on his

---

[2]      Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. See 20 C.F.R. § § 404.906 and 404.966 (2002). These modifications include, among other things, the elimination of the reconsideration step and at times, the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

shoes and pants because of bending; that he takes naps during the day because he has difficulty sleeping at night; that he spends a lot of time reclining on a couch with a heating pad on his lower back; that his health problems have caused him to stop shopping; and that he cannot engage in his hobbies of working on old cars and putting together model cars. Tr. 315-17, 320-21, 324-25, 334. Plaintiff also testified that when he cooks he can only stand a few seconds at a time; that he cannot houseclean due to his low back pain; that he cannot use a bathtub; and that his sleep is interrupted three or four times a night. Tr. 335.

Plaintiff testified that he has headaches every day; that he has nausea with the headaches; that he takes Darvocet for the headaches which last six to seven hours; that pain radiates from the base of his skull to between his shoulders; that this pain can last a half a day; that he has a knot on the right side of his neck; that when he has to sit in a chair, such as at the hearing, he pushes down with his right arm to take pressure off his low back; that his back pain runs from his toes to past his waist; that his legs go numb up to his hips; that he has a recurring cyst on his tailbone; that when the cyst comes back he "can't hardly sit"; that at the time of the hearing the cyst had been "coming up about every two months" and lasted for "anywhere from two and a half to three weeks." Tr. 327-29, 331, 333.


Plaintiff further said that he has limited range of motion in his neck and shoulders; that he normally does not lift anything heavier than a gallon of milk; that his back pain makes it difficult to walk; that he cannot bend backwards; and that bending forward helps his back and hurts his knees. Tr. 330, 332.

Plaintiff testified that he takes Nexium for acid reflux, Wellbutrin for depression and for smoking cessation, Flonase for breathing, Meclizine for dizziness, Darvocet for headaches, Relafen

for muscle spasms, Tylenol as needed, and a multi-vitamin and that he has an oxygen machine by his bed.  Tr. 316-19, 327, 333.

**B.      Testimony of Vocational Expert:**

The Vocational Expert ("VE") testified that Plaintiff's prior work as a truck driver is listed in medium terms of physical exertion; that it is semi-skilled; and that transferability and experience is limited to other truck driving jobs.  The ALJ posed the following hypothetical to the VE:

> A hypothetical person of [Plaintiff's] age, education, and work experience, ... [who] could lift 20 lbs. frequently, could stand and/or walk about six hours in an eight-hour workday, and could sit about six hours in an eight-hour workday, could occasionally climb rams and stairs, and stoop, kneel and crouch, but could never climb ladders, ropes or scaffolds or the like, or crawl, and ... [who] would have difficulty reaching below the knees, ...[and who] would have to avoid extreme heat and cold, avoid concentrated exposure to it ... and also humidity ... and vibration, ..., fumes, ..., noxious environments generally, and [who] should avoid working at unprotected dangerous heights and around unprotected dangerous machinery [and for whom] there's no past relevant work available.

Tr. 340.

The ALJ asked if there would be work which the above described hypothetical person could perform.  The VE noted that the only limitation the hypothetical person had regarding use of the hands was "reaching below the knees." Tr. 340.  The VE testified that there were other things which the hypothetical person could do, which would be direct entry, unskilled work.  These included hand working, packaging, assembly type work, and table assembly which did not involve reaching below the knees. The VE also stated that the hypothetical person could possibly work as a cashier, perform guard work, and work as an information clerk.  The VE further testified that these jobs  were available in central Missouri and that the table assembly jobs and cashiering jobs are sedentary and light.  Tr. 341.

### III.
### MEDICAL RECORDS

On a Physical Examination Form for the Department of Transportation dated February 13, 2001, Henry D. Petry, D.O., reported that Plaintiff had asthma which was well controlled; that his general appearance and development were good; that he had normal strength in his upper extremities and normal ROM and strength in his lower extremities; that his spine was "OK"; and that Plaintiff was qualified under the regulations.  Tr. 223.

Dr. Petry stated in a September 5, 2002 Medical Report Including Physician's Certification/Disability Evaluation for the Missouri Division of Family Services that Plaintiff's clinical history included shortness of breath walking more than fifty feet; and that he was unable to drive an over-the-road truck; that he had a lot of upper abdominal pain which was relieved by Nexium.  Dr. Petry further reported that Plaintiff had not been hospitalized within the past year; that Plaintiff's diagnosis included chronic obstructive lung disease, emphysema, gastroesophageal reflux disease, and degenerative joint disease of the thoracic spine, neck, and shoulders; and that due to shortness of breath Plaintiff was able "to do very little."  Tr. 199-200.

By letter dated April 10, 2003, the State of Missouri, Division of Vocational Rehabilitation informed Plaintiff that he was eligible for vocational rehabilitation services.  Tr. 178.

Dr. Petry's notes of August 1, 2003, state that Plaintiff complained of a stiff neck which kept him from "breathing good," a cough, and back stiffness in the morning.  Dr. Petry's notes of this date state that Plaintiff's lungs were clear to auscultation; that his chest motion was good; and that he had no edema in his extremities.  Tr. 186.

In a Medical Examination Report for Commercial Driver Fitness Determination, dated August 18, 2003,  Dr. Petry reported that Plaintiff had shortness of breath, lung disease, chronic bronchitis, and asthma; that Plaintiff took Advair for shortness of breath; that Plaintiff was doing well on his current medication; and that his medication should not affect his driving. Tr. 181. Dr. Petry further

reported, in regard to Plaintiff's lungs and chest, that he did not have abnormal chest wall expansion, respiratory rate, breath sounds including wheezes or alveolar rales, impaired respiratory function, dyspnea, or cyanosis. He also reported, in regard to Plaintiff's extremities, that he did not have "loss or impairment of leg, foot, toe, arm, hand, finger"; that he did not have deformities, atrophy, weakness, edema, insufficient grasp and prehension of upper limb to maintain steering wheel grip; and that he did not have insufficient mobility and strength in lower limb to operate pedals properly. In regard to Plaintiff's spine, Dr. Petry reported that Plaintiff did not have deformities, limitation of motion, or tenderness. Dr. Petry further reported that Plaintiff qualified for a certificate. Tr. 183.

Beth Schrange, FPN, of the Northeast Missouri Health Council, reported on February 17, 2004, that Plaintiff stated that his lungs felt clear on this date and that his chronic obstructive pulmonary disease ("COPD") was not bothersome. Records of this date state that upon examination a review of Plaintiff's systems was unremarkable; that no respiratory distress was noted; that Plaintiff's heart was regular in rate and rhythm without murmur; that his lungs were "clear to auscultation although respiratory effort and breath sounds [were] diminished bilaterally"; and that his extremities and neurologic exam [were] grossly normal." Tr. 266.

Robert R. Conway, M.D., stated in a clinic note dated August 16, 2004, that Plaintiff was last seen by this doctor in November 2003 for chronic neck pain and low back pain related to cervical and lumbar spondylosis and bilateral patellofemoral arthralgia; that on that earlier date Plaintiff had been through physical therapy and was having "relatively few symptoms"; that Plaintiff reported that currently he was not doing his exercises on a regular basis and that he had a recurrence of symptoms; and that Plaintiff said he was using a bicycle occasionally. On examination Dr. Conway reported that an impingement test in both shoulders was negative; that strength in the upper extremities was 5/5; that Plaintiff was able to come up on his heels and toes and perform a deep knee bend; that he had

knee pain when doing so; and that no effusion of the knees was noted. Dr. Conway's diagnosis was cervical and lumbar spondeylosis without evidence of radiculopathy or myelopathy and patellofemoral arthralgia bilaterally. Dr. Conway prescribed physical therapy for Plaintiff. Tr. 280-81.

In a Medical Source Statement dated October 4, 2004, Dr. Petry reported that Plaintiff could not lift any weight; that he could stand less than two hours in an eight-hour workday; that he could sit less than six hours in an eight-hour workday; that his ability to push and pull were limited in the upper and lower extremities; that he could never climb, balance, kneel, crouch, crawl, or stoop; that he had severe low back pain and weakness in the legs; that he was unable to bend back due to pain; that he was limited in his ability to reach; that he had unlimited ability to handle, finger, and feel; that he could never reach; that he was unlimited in the ability to see, hear and speak; that he was limited in regard to temperature extremes, vibration, humidity, hazards, and fumes; and that he was not limited in regard to noise. Tr. 282-85.

In a letter dated January 27, 2005, Jennifer L.K. Clark, M.D., reported that she evaluated Plaintiff; that Plaintiff complained of stabbing pains in the fronts of his knees and shins and numbness in the backs of his thighs; that Plaintiff said his pain ranges from six to ten; and that Plaintiff smoked one half package of cigarettes a day. Dr. Clark reported that physical examination revealed that Plaintiff was in no acute distress; that he had excellent definition of muscles in his arms, upper extremities and back; that he had 5/5 strength for shoulder abduction, elbow felxion and extension, wrist extension, wrist flexion, hand grip, hand intrinsics and hip flexion and extension, knee extension, knee flexion, dorsiflexion, plantar flexion, extensor halluces longus; that he had full active range of motion of the shoulders, elbows wrists, hips, knees and ankles including cervical, thoracic and lumbar spine without irritability; that he could bend fully over from the waist and touch his fingertips to the floor without difficulty; that he walked with a normal gait and required no assistive device; that he

got up and down with ease; that he squatted normally with no difficulty and came back up; that there was minimal patellofemoral crepitation; that his low back and buttock muscles were well developed; that Plaintiff's hands were heavily callused and the base of his palms had a dark stain; that "the only area of tenderness was approximately 2 cm below the lumbosacral junction over the sacrum itself"; and that he was not short of breath; that he was occasionally anxious. Dr. Clark further reported that Plaintiff had a history of mild osteoarthritis of the cervical and lumbar spine and patellofemoral joint by history and that these conditions appeared to be stable; that Plaintiff had a history of stomach difficulty; and that he had a history of asthma/COPD which appeared to be well controlled. Dr. Clark stated that:

> [Plaintiff's] complaints of pain far outweigh any physical findings. He no longer has evidence of bicipital teninitis that he had at the previous visits. His exam would indicate he is still working as a mechanic or doing other hard work with his hands and heavy work according to the musculature of his body.
>
> I see no reason why he could not continue to work as a truck driver or mechanic based on his examination today as there are pulmonary complaints that would otherwise be affected. Certainly I don't see them listed in the chart and they weren't obvious on exam.

Tr. 288-89.

A pulmonary function test conducted on March 23, 2005, showed that the FEV1[3] was normal; that the FEV1/FVC ratio and FEF25-75% were reduced; that reduced diffusing capacity indicated a severe loss of functional alveolar capillary surface; that the diffusing capacity was not corrected for

---

[3] The critical spirometric value for assessing disability based on COPD is the $FEV_1$ value, or forced expiratory volume at one second. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, §3.02(A) (2000). The Regulations stipulate that any pulmonary function test resulting in an $FEV_1$ value less than 70 percent of the predicted value must be repeated after administration of an aerosolized bronchodilator to the test subject. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, §3.00(E). If such administration occurs, the "dose and name of the bronchodilator should be specified." Id. "If a bronchodilator is not administered, the reason should be clearly stated in the report." Id.

Plaintiff's hemoglobin; that "although there [was] airway obstruction and a diffusion defect suggesting emphysema, the absence of overinflation [was] inconsistent with that diagnosis"; that "[i]n view of the severity of the diffusion defect, studies with exercise would be helpful to evaluate the presence of hypoxemia"; and that the diagnosis was minimal obstructive airways disease and severe diffusion defect. Tr. 300.

A radiology report dated May 19, 2005, states that Plaintiff had mild obstructive pulmonary disease; that a CT of the chest was otherwise normal; that there were "some lung cysts present, small"; that they were "relatively few in number"; and that there was no evidence of interstitial pulmonary fibrosis, no pneumonic infiltrates, masses or nodules, effusions or mediastinal lymphadenopathy. Tr. 303.

In a letter dated May 26, 2005, Dr. Petry stated that Dr. Clark's letter expressed her opinion "as to no limitations [] solely based on [Plaintiff's] orthopedic condition." Dr. Petry stated, based on spirometry, CT scans of the chest with and without contrast, and a polysomnogram, that Plaintiff has "mild chronic obstructive lung disease." Dr. Petry also stated that Plaintiff "continues to smoke cigarettes even knowing this will continue to cause a permanent worsening of his Chronic Obstructive Lung disease." Tr. 298.

## IV.
## LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20

C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id. Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision"); Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier,

294 F.3d at 1022 (internal citations omitted). <u>See</u> <u>also</u> <u>Eichelberger</u>, 390 F.3d at 589; <u>Nevland v.</u> <u>Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dept. of Health, Education and Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.

Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Rautio, 862 F.2d at 180; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

## V.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court

must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ failed to give controlling weight to Dr. Petry's opinion that Plaintiff is totally disabled and that the ALJ should not have given controlling weight to Dr. Clark's opinion as she saw Plaintiff only once.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) 2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000)(citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data). See also Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). A treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th

Cir. 2004); Hogan v. Apfel 239 F.3d 958, 961 (8th Cir. 2001); Social Security Ruling 96-2p, (July 2, 1996). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013. "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlin, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory letter from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); Chamberlain, 47 F.3d at 1494; Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citing Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991)); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as

its not being supported by any detailed, clinical, diagnostic evidence).  On the other hand, a treating physician's observations should not necessarily be treated as conclusory where the doctor had "numerous examinations and hospital visits" with a claimant.  See Turpin v. Bowen, 813 F.2d 165, 171 (8th Cir.1987).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996).  SSR 96-2p clarifies that 20 C.F.R. § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination  or decision for the weight given to a treating source's medical opinion(s)."  Id. at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir.2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted).

Moreover, "[a]lthough a treating physician's opinion is considered to be significant, specialists' opinions are generally afforded more weight." Qualls v. Apfel, 158 F.3d 425, 428 (8th Cir. 1998) (citing 20 C.F.R. § 404.1527(d)(5)).  The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the

opinion of a source who is not a specialist." Kelley v. Callahan, 133 F.3d 583, 588 (8th Cir. 1998) (citation omitted).

The ALJ in the matter under consideration noted that Plaintiff alleged disability since July 15, 2002, on the basis of low back and neck pain, COPD, numbness in his legs, reflux disease, arthritic pain in his hips and knees, dizziness, daily migraine-like headaches, occasional nausea and light sensitivity, and depression. Tr. 28. The ALJ further considered that Dr. Petry was Plaintiff's treating physician; that he saw Plaintiff for allegations of shortness of breath, abdominal pain, back pain, knee pain, sinusitis, acute bronchitis, sore throat and neck pain prior to the date upon which Plaintiff alleges he became disabled; that Plaintiff was seen by Dr. Petry on July 17, 2002, on which date Plaintiff reported tenderness to his knees; that Plaintiff was cleared by a doctor on July 23, 2002, to drive a commercial truck; that an abdominal ultrasound in February 2003 showed gastroesophageal reflux disease and gastritis; that Plaintiff had an MRI in February 2003 because of complaints of headache, dizziness and nausea; that the MRI was negative; that oxygen saturation studies of March 2003 and June 2004 did not show anything remarkable; that Dr. Petry saw Plaintiff for complaints of sinusitis between December 2003 and April 2004; that the only time Plaintiff alleged left shoulder pain was in January and March 2004; that in September 2003 Dr. Petry referred Plaintiff to Dr. Conway because of Plaintiff's allegations of back and neck pain; that Dr. Conway concluded that the pain was nonradicular in nature and could be managed by prescription pain medication and physical therapy; that Dr. Conway told Plaintiff only to avoid squatting if it aggravated his pain; that in November 2003 Plaintiff was not doing physical therapy and was relying on home exercises; that Plaintiff did not see Dr. Conway again until August 2004, at which time Plaintiff alleged reoccurrence of back, neck and knee pain; that in August 2004 Plaintiff admitted to Dr. Conway that he had not

been doing his exercises for some time; and that Dr. Conway told Plaintiff in August 2004 to resume physical therapy and exercises. Tr. 30-31.

The ALJ also considered that Plaintiff saw Dr. Clark on a consulting examination after the hearing and that Dr. Clark concluded that Plaintiff's asthma or COPD was stable; that a musculoskeletal examination was unremarkable; that whatever degree of osteoarthritis Plaintiff had in his knees and spine was stable and mild; and that Plaintiff's complaints of pain outweighed the actual physical findings. The ALJ further considered that Dr. Clark placed no physical limitations on Plaintiff and saw no reason he could not resume his prior work as a truck driver and mechanic. Tr. 31.

The ALJ also considered pulmonary function tests of March 2005 showed nothing worse than mild obstructive airways disease; that CT scans of April and May 2005 showed only mild COPD; and that a sleep study of May 2005 showed no significant degree of obstructive sleep apnea. Tr. 31. Thus, the ALJ properly considered that Dr. Petry's conclusions were not supported by test results. See Veal, 833 F.3d at 699.

Upon choosing to discredit Dr. Petry's conclusion in the October 24, 2004 questionnaire that Plaintiff cannot perform even sedentary work,[4] the ALJ considered that there was no documented

---

[4]     20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every

medical evidence or verification by Dr. Petry of a long term impairment related to Plaintiff's allegation of frequent or uncontrollable headaches, dizziness, nausea, light sensitivity, or hip or knee pain. The ALJ also considered that there was no diagnosis of a chronic mental impairment or of any chronic symptoms suggesting such a condition and that there was no evidence of cardiovascular disease or serious sleep apnea. Consistent with the case law, the ALJ also considered that Dr. Petry's responses on the questionnaire were blanket acceptance and recitation of Plaintiff's subjective allegations. See Stormo, 377 F.3d at 805-06. Further, the ALJ properly considered that Dr. Petry's conclusion on the questionnaire was at odds with the medical evidence. See Hacker, 459 F.3d at 937; Prosch, 201 F.3d at 1013. The ALJ, therefore, gave proper consideration to Dr. Petry's opinion as expressed on the questionnaire. See Chamberlain, 47 F.3d at 1494; Reed, 399 F.3d at 920; Ward, 786 F.2d at 846; King, 742 F.2d at 973. Moreover, to the extent that Dr. Petry opined that Plaintiff is unable to work, as stated above, this is an issue reserved for the Commissioner. See Ellis, 392 F.3d at 994.

Consistent with the case law and Regulations, the ALJ also considered that medical records reflect that Plaintiff's occurrences of sinusitis, pilonidal cyst and gastroesophageal reflux disease were either infrequent or controlled by medication. The ALJ also considered, pursuant to Plaintiff's admission at the hearing, that whatever degree of depression Plaintiff had was under control with medication See Estes, 275 F.3d at 725 (holding that conditions which can be controlled by treatment

---

two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

are not disabling); <u>Murphy</u>, 953 F.2d at 384; <u>Warford v. Bowen</u>, 875 F.2d 671, 673 (8th Cir. 1989).

Additionally, consistent with the Regulations and case law the ALJ considered that Dr. Petry is not a specialist in orthopedics; that Dr. Clark is a specialist in orthopedics and Dr. Conway is also a specialist; that Dr. Clark was "unimpressed" by Plaintiff's musculoskeletal complaints; that Dr. Clark placed no physical restrictions on Plaintiff; that Dr. Conway opined that whatever problems Plaintiff had could be alleviated by physical therapy and exercise; and that more weight should be given to the opinions of Dr. Clark and Dr. Conway. <u>See</u> <u>Qualls</u>, 158 F.3d at 428; <u>Kelley</u>, 133 F.3d at 588. Further, consistent with the Regulations and case law, the ALJ articulated reasons for discrediting the opinion of Dr. Petry and crediting the opinion of specialists including the fact that Dr. Petry's opinion was inconsistent with the medical records, Plaintiff's medical history, and test results. <u>See</u> <u>King</u>, 742 F.2d at 973.

Further, the court notes upon reaching the conclusion that Plaintiff could work as a truck driver or mechanic Dr. Clark relied on an MRI which showed no radiculopathy, herniated disk or other abnormalities. Dr. Clark also relied upon her physical findings including that Plaintiff had large and/or well developed muscles in his arms, upper extremities, low back and buttock; that Plaintiff could bend over fully from the waist and touch his fingertips to the floor; that Plaintiff could bet up and down with ease. Dr. Clark concluded that Plaintiff's complaints of pain were not supported by her physical findings.

Upon discrediting the opinion of Dr. Petry the ALJ noted that, after a physical examination on August 18, 2003, Dr. Petry's pronounced Plaintiff fit to drive a commercial truck and that Dr. Petry admitted in his letter of May 26, 2005 that Plaintiff's lung disease was mild in degree. Thus, the ALJ properly noted the inconsistency between Dr. Petry's conclusion that Plaintiff cannot even

engage in sedentary work and his own findings.  See Strongson v. Barnhart, 361 F.3d 1065, 1070 (8th Cir. 2004) ("[T]he ALJ need not give controlling weight to a physician's RFC assessment that is inconsistent with other substantial evidence in the record.").

The ALJ further considered that Plaintiff was found qualified for vocational rehabilitation in April 2003 and that Plaintiff worked as a truck driver beginning September 20, 2002, for about thirty hours and that he did so until sometime in 2003.  Also, the ALJ considered that Plaintiff testified at the hearing that he did "odd jobs" for awhile. Tr. 29. Indeed, "[a]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148049 (8th Cir. 2001).  "Working generally demonstrates an ability to perform a substantial gainful activity." Goff v. Barnhart, 421 F.3d at 792 (citing Nabor v. Shalala, 22 F.3d 186, 188-89 (8th Cir. 1994)). 20 C.F.R. § 404.1574(a) provides that if a claimant has worked, the Commissioner should take this into consideration when determining if the claimant is able to engage in substantial gainful activity.  Moreover, when a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990).

Upon discrediting the conclusion of Dr. Petry, the ALJ also considered that Plaintiff's "hands appeared at the time of the hearing, and at the time of a consultive physical examination in January 2005 [] as though he had been doing some obvious physical labor recently."  The ALJ also considered that the appearance of Plaintiff's hands suggested an ability to do some kind of physical labor.  See Cruse, 867 F.2d at 1186 (holding that upon discrediting a claimant's credibility it is proper for an ALJ to consider his or her appearance at the hearing).

The court further notes that while Plaintiff claims that he is unable to work because of respiratory problems, according to Dr. Petry's letter of May 2005, Plaintiff continued to smoke. Where a claimant's impairment is respiratory in nature, failure to stop smoking militates against a finding of disability. See Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000).

The ALJ considered that Plaintiff had no surgery or inpatient hospitalizations in recent years, that he does not take strong doses of pain medication, and that there is no evidence of uncontrollable adverse side effects from medication. Pursuant to Polaski, 730 F.2d at 1322, the absence of side effects from medication is a proper factor for the ALJ to consider when determining whether a plaintiff's complaints of disabling pain are credible. See Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994). Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (holding that, despite a plaintiff's argument that he was unable to afford prescription pain medication, an ALJ may discredit complaints of disabling pain where there is no evidence that the claimant sought treatment available to indigents); (Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain); Cruse v. Bowen, 867 F.2d 1183, 1187 (8th Cir. 1989) (holding that minimal consumption of pain medication reveals a lack of disabling pain); Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling pain). Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989).

For the reasons stated above the court finds that the ALJ's decision not to credit Dr. Petry's opinion that Plaintiff can engage in less than sedentary work is consistent with the Regulations and case law. The ALJ considered all the evidence of record, including the records and opinion of Dr. Petry, who was Plaintiff's treating physician, the records and opinions of specialists and consulting doctors, including Dr. Conway and Dr. Clark, and the clinical data and resolved conflicts among these sources. See Tindell, 444 F.3d at 1004; Estes, 275 F.3d at 725. Further, the ALJ acknowledged that as a treating physician Dr. Petry's opinion was entitled to great weight. However, based on the record as a whole, the ALJ discredited Dr. Petry's conclusion. See Prosch, 201 F.3d at 1013; Chamberlain, 47 F.3d at 1494. The court finds that the ALJ's decision in this regard is supported by substantial evidence on the record. See SSR 96-2p.

The ALJ stated that in the event this matter is remanded the issue of substantial gainful activity should be revisited. Plaintiff contends that this statement is evidence that the ALJ's decision is not supported by substantial evidence. This argument is without merit. Indeed, at Step 1 of the sequential analysis applicable to a determination of whether a claimant is disabled an ALJ is directed to consider wether the claimant is engaging in substantial gainful activity. While the ALJ did not reach a conclusion at this Step, he proceeded further with the sequential analysis. The only limitation which the ALJ found was that Plaintiff has the exertional limitation of lifting or carrying no more than fifty pounds frequently. Indeed, the Vocational Expert noted that Plaintiff's past relevant work as an over-the-road truck driver was medium work. "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." 20 C.F.R. §220.132. Proceeding with the sequential analysis, the ALJ determined that Plaintiff has an RFC which does not preclude his performing his past relevant work. Thus, the court finds that the ALJ's decision that Plaintiff can engage in his past relevant work as an over-the-road truck driver is

consistent with the Regulations and that it is supported by substantial evidence. Because the record establishes that substantial evidence supports the ALJ's decision that Plaintiff can perform his past relevant work it is inconsequential that the ALJ did not determine at Step 1 whether or not Plaintiff engaged in substantial gainful activity during the relevant period.

## VI.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision is affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Brief in Support of Complaint is **DENIED;** Doc. 11

**IT IS FURTHER ORDERED** that separate Judgment shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this <u>20th</u> day of March, 2007.